## UNION PACIFIC RAILROAD COMPANY V. JOHN FICKENSCHER.

FILED JUNE 9, 1904.   No. 11,939.

Evidence examined, and *held* not sufficient to support the verdict and judgment.

ERROR to the district court for Dawson county: HOMER M. SULLIVAN, JUDGE. *Reversed.*

*John N. Baldwin, Edson Rich, E. A. Cook* and *John M. Ellingsworth,* for plaintiff in error.

*Warrington & Stewart, George W. Thomas* and *H. M. Sinclair, contra.*

DAY, C.

This action was brought by John Fickenscher in the district court for Dawson county against the Union Pacific Railroad Company to recover damages sustained by him on acount of having been burned in a prairie fire, which he alleged in his petition was started through the negligence of the railroad company. Upon the trial the plaintiff recovered a judgment for $1,175, to review which, the defendant has brought error to this court.

It was contended upon the part of the defendant that the fire which it was alleged to have negligently set out never reached the point where the injury occurred, and that the fire which burned the plaintiff, was a fire which originated from unknown causes, and was driven down from the northwest by a heavy gale which was blowing from that direction at the time of the injury. The petition in error contains 63 assignments of error, but, in the view we have taken of the evidence, it seems unnecessary to consider any of the assignments of error except those relating to the sufficiency of the evidence to sustain the verdict and judgment. For the purpose of

elucidating the opinion, we have attached a map showing the distances and relative positions of places mentioned in the opinion:

The record shows that about noon on April 16, 1899, a fire was discovered along defendant's right of way soon after a train on defendant's railroad had passed, going west. The fire started in section 27, township 12, range 26, near the town of Vroman, and during the afternoon and evening burned in a northwesterly direction and by dark it had reached Fosberg's place some seven miles north and a mile and a half west of the point where it started. During the afternoon and evening a light wind was blowing slightly west of north. The country over which the fire spread, and, in fact, all of the country in that vicinity north of the railroad, is a rough sand-hill country, sparsely covered with grass. The testimony shows that about dark on the evening of the 16th, the fire had reached the south line of land owned by one Fosberg, to wit, the southwest $\frac{1}{4}$ of section 22, township 13, range 26, and that the neighbors living to the north and northwest of his place came to his house to assist in fighting the fire, and among those who came were the plaintiff, his father and brother. These parties started in at Fosberg's and plowed a furrow and back-fired along the east side of a road running from Fosberg's in a southerly direction to one Ditto, residing on the northeast $\frac{1}{4}$ of section 8, township 12, range 26. The testimony of all the parties is clear that this fire did not spread west of the road above described, or north of the south line of Fosberg's, except as indicated by the line representing the outline of the fire and not material to this discussion, as it is conceded that this branch of the fire did not reach the point where the injury occurred. Fosberg and his neighbors who were fighting the fire turned out of the road a short distance north of the Ditto place and changed their course to a southeasterly direction, and continued to fight the fire, keeping upon the west line of it until they reached a point somewhere near the center of section 16, in a pasture known as Larson's pasture. At about three o'clock in the morning several members of the party made an observation from the top of one of the hills near the

center of the section, and all of them say that the re-
flection of fire could be seen to the west and southwest
of them, but none of them were able to place the distance
of the fire with any accuracy. About that time the wind
began to change, and in a very short time a heavy wind
was blowing from the northwest. The Fosberg party
then abandoned the fight and started north along the road
leading from Ditto's to Fosberg's. The testimony is not
clear as to the exact time they reached Fosberg's, but it
was somewhere near four o'clock; all agree, however, that
a terrific gale was blowing from the northwest. The
plaintiff, his father and brother, left Fosberg's at his
southwest corner and continued northward toward their
home in section 4, township 13, range 26. At that time
the reflection of a fire to the northwest could be plainly
seen, and some of the party urged the plaintiff not to
attempt to go forward. After going some sixty rods
north of Fosberg's corner, a fire from the northwest swept
down upon them, and the plaintiff, his father and brother,
were more or less burned and injured. The testimony also
shows that parties who were interested in Larson's pasture
were also fighting the fire during the afternoon and even-
ing from a point about the middle of section 16 and along
the southeast line thereof toward the railroad track, and
that the fire did not pass west of the east line of sections
16, 21 and 28. There is some testimony, however, that in
the middle of the afternoon a line of the fire had spread
through the hills along the north side of section 16, and
that it had spread into section 17, but the testimony shows
that this fire was put out. The neighbors who live im-
mediately to the west of the Ditto-Fosberg road are posi-
tive that the fire which was burning in the afternoon
southeast of Pettit's was put out.

The theory of the plaintiff was that the fire had crept
around and through the sand hills along the north side of
sections 16 and 17, and thence through the north side of
Beatty's pasture until it reached a point nearly north of
Brady Island; that it then spread northeasterly until it

reached a point northwest of the place where the injury occurred, and that, when the wind changed to the northwest, this branch fire was driven back upon the plaintiff and injured him.    In support of this theory the plaintiff relies solely upon the testimony of witnesses residing from three to four miles south of Brady Island, and who viewed the fire during the afternoon and evening from that distance south of Brady Island.    Some of the witnesses say they watched the fire all afternoon, saw it gradually spread west until late in the evening it appeared to be going north, directly north of George's pasture, which adjoins Brady Island on the east.    None of them, however, pretend to trace the fire but a short distance north of Brady Island.

It seems a striking fact that none of the neighbors living in the vicinity of where the fire is supposed to have burned saw it or even the reflection of it.    Granting that the fire was burning north of Brady Island late in the evening, it does not seem to us that that fact alone would be sufficient to go to the jury that it was the cause of an injury occurring six hours thereafter and six miles distant.    It is a fact within the common observation of men, that the location of a fire is but a mere conjecture when the reflection of it on the sky is the only known fact to determine its location.    Even when the fire itself can be seen, its location is very deceptive.    Taking this whole evidence it seems to us that the verdict of the jury is founded upon a mere conjecture.

The testimony is clear that soon after three o'clock the wind changed to the northwest and blew a gale, some of the witnesses placing its velocity at upwards of thirty miles an hour.    The testimony is also undisputed that for several days prior to the injury, a fire had been seen a long distance to the northwest of the place of the injury, and that it was driven down over the country in that vicinity is shown beyond any doubt.

The plaintiff contends that it could not have been the northwest fire which did the injury, because that fire did

not reach that locality until some time after the injury, possibly an hour. To establish this fact, the plaintiff shows that the fire from the northwest did not reach his home or Kratzenstein's place until an hour or more after the injury. This fact, however, is far from showing that it was not the northwest fire which did the injury or that it was the branch fire from the Vroman fire which did. It is also a matter of common experience that in a prairie fire that a part of it, known as the head fire, travels much faster than the side fire, and if it was the head fire which caught the plaintiff, it is not at all improbable that the side fire might not have spread to Kratzenstein's and to plaintiff's place for an hour or more after the head fire had passed.

The rule of law requires of the plaintiff that he make out his case by a fair preponderance of the evidence, and the evidence must relate to facts which establish with reasonable certainty the plaintiff's cause of action; and while it is for the jury, and not for the court to pass upon the weight to be given the evidence, it does not seem to us that the rule should be carried to the extent of allowing a verdict to stand, based upon evidence which at best is a mere conjecture. The plaintiff's theory of the case is possibly the correct one, but, if so, he is unfortunate in not having witnesses who are able to trace the fire with a reasonable degree of certainty to the place of the injury.

For the reason that the testimony fails to sustain the verdict and judgment, we recommend that the judgment should be reversed and the cause remanded for further proceedings.

HASTINGS, C., concurs.

DUFFIE, C., concurring.

It is practically conceded that a fire was started by a Union Pacific train Sunday the 16th of April, 1899, between the stations of Vroman and Brady Island. The wind was blowing from the southeast and this fire worked its way in a northwesterly direction into the sand hills.

The plaintiff below claims that there were two branches of this fire, one running in a more westerly direction than the other, and that this westerly branch worked its way west and north until it reached a point some distance west of Brady Island and north of that point several miles, until a change in the wind which occurred about two or three o'clock Monday morning, when it was driven back in a southeasterly direction and caught the plaintiff who was on his way home from a point some four or five miles northeast of Brady Island, where he and his neighbors had been fighting what the plaintiff claims to have been the east branch of the fire. The theory of the defendant below is that the fire never got as far west as Brady Island and no further west than to the point where plaintiff below and his neighbors were fighting it. There was a fire started many miles northwest of the place where the plaintiff was injured and had been burning all day Sunday. The wind, when it changed from the southeast to the northwest Monday morning, commenced to blow with great violence, some of the witnesses placing the velocity at from thirty to sixty miles an hour. This wind undoubtedly brought down the fire which had started a day or two previously in the northwest, and the controverted question was, did this fire do the injury complained of or was it a branch from the fire set by the engine of the railroad company which had worked west and north until a change in the wind from the southeast to the northwest brought it back in a southeasterly direction to the place where the injury occurred. There is some evidence to support the verdict of the jury. Most of this evidence comes from parties living south of the Platte river and four miles or more south of Brady Island, who testify that they saw the fire about the time that it started along the right of way of the railroad company and watched it at different times during the afternoon and evening of Sunday. These witnesses testify that the fire had worked its way west and north of Brady Island. If this be true, the course of the fire from the burnt ground

16

that it passed over, must have been clearly distinguishable and yet parties living in the vicinity where the fire is claimed to have passed, testify that the grass was unburned Monday morning, and parties from the north who had occasion to visit Brady Island Monday morning, are very positive in their testimony that the grass between what is called the east line of the fire and Brady Island was wholly unburned. It seems to me that the positive evidence of those living in the vicinity and others who had occasion to pass over the section of country where the fire is claimed to have run, that the grass was wholly unburned, that no trace of the fire existed, ought to be accepted as conclusive upon that question, and conclusive upon the fact that it was the fire which originally started in the northwest that was the cause of the injury.

The opinion of Judge DAY upon this branch of the case is so conclusive that I think it ought to stand.

By the Court: This case has been several times argued, and there being some difference of opinion among the commissioners who heard the several arguments, it was heard again by the court. With the assistance of able counsel for both parties, we have examined the entire record and conclude that the foregoing opinions of Mr. Commissioner DAY and Mr. Commissioner DUFFIE show the true condition of the evidence.

For the reasons there given, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.